Kim Blandino PECULIAR PRO SE#363075
CCDC In Custody House Arrest Module
C/O 441 N16th St.
Las Vegas, Nevada 89101
(702) 219-5657
No Fax
Kim43792@earthlink.net

```
☑ FILED          ___ RECEIVED
☑ ENTERED        ___ SERVED ON
        COUNSEL/PARTIES OF RECORD

          SEP 16 2024

    CLERK US DISTRICT COURT
       DISTRICT OF NEVADA
BY:_____CAH_____DEPUTY
```

## US DISTRICT COURT NEVADA
## DISTRICT OF NEVADA

KIM BLANDINO, an individual,

2:24-CV-1727-CDS-BNW

Plaintiff,

-vs.

Las Vegas Metropolitan Police Department
In its official capacity:CLARK COUNTY,
A political subdivision of the State of Nevada,
Former DETECTIVE KENNETH MEAD, an
individual; OFFICER VANCE NEESON, an
individual; OFFICER CYNTHIA MARTINEZ,an
individual; OFFICER OSCAR CARDENAS,
an individual; OFFICER ANTHONY ABELL, an
individual;OFFICER STEVEE FERNANDEZ, an
individual, OFFICER FAAIU POLOA, an individual;
OFFICER VICTOR ARMENDARIZ, an individual;
OFFICER RICHARDVALENZUELA, an individual;
OFFICER JAMES PORTELLO, an individual;
and DOES 1-10 of LVMPD

Defendants.

## VERIFIED (Backup) COMPLAINT FOR DECLARATORY AND

## INJUNCTIVE RELIEF AND FOR COMPENSATORY AND PUNITIVE

## DAMAGES

COMES NOW, Plaintiff, Kim Blandino ("Kim") individually and in his capacity as an established religion guaranteed under the establishment clause of First Amendment to the U.S. Constitution as well as a member of the independent free press, and petitioner for redress of grievances and a peaceable assembler and a religious practitioner all under the same first amendment appearing as a peculiar pro se in accord with Deuteronomy 14:2 KJV. That Kim complains against Defendants Las Vegas Metropolitan Police Department, Kenneth Mead and other employee officers of LVMPD named and Does 1-10 (collectively, "Defendants") and each of them jointly and severally, based upon knowledge, information, and reasonable belief therefrom, allege, complain and state under penalty of perjury as follows:

**INTRODUCTION**

1. This is a civil rights action pursuant to the various Amendments to the U.S. Constitution and 42 U.S.C. sections 1983, 1985 Plaintiff alleges the defendants violated Kim's rights continuously under color of law for decades in a continuing course of conduct and, has failed in every way to correct or put in place policies and procedures that would correct these violations and has caused Kim injury and continuing damage. That LVMPD has practices or customs of allowing officers and employees to violate rights under the

2

U.S. Constitution and other laws.

## JURISDICTION AND VENUE

2. This civil rights action raises federal questions as to given rights under God or the Creator that are acknowledged in the U.S. Constitution, specifically under the First, Ninth, Tenth .and Fourteenth Amendments and under federal law, 42 U.S.C. Sec 1983 and .1985. And this court needs to take judicial notice that the criminal law is impacted, 18 U.S.C. 241 242 and that Kim and other similarly situated people are being criminally hurt and 18 USC Sec 3771 is in play. That while 18 U.S.C. Sec 3771 does not create a cause of action for damages nothing in the Code prohibits declaratory or injunctive relief under this provision.

This Court has subject matter jurisdiction under 28 U.S. C. Sec 1331 and Sec 1343 and 28 U.S.C. Sec 1367.

3. This Court has the authority to grant the requested declaratory relief under 28 U.S.C. Sep. 2201 and 2202 any requested injunctive relief under 28 U.S.C, Sec 1343 and costs under 42 U.S.C. Sec. 1988. And if the court forces counsel on Kim who at present proceeds pro se or Kim is allowed to have licensed co-counsel then Kim is entitled attorney's fees under Sec 1988.

4. Venue is proper in this Court under 28 U.S.C. Sec. 1391(b) because a substantial part of the events or omissions giving rise to claims occurred in

3

this District and Plaintiff is in custody in this district and forbidden from leaving Clark County.

## PÁRTIES

5. Kim Blandino is less than one month from being a 69 year-old man (from outside the womb) in a descendancy from the first created man, Adam and what came to be his wife, Eve who was created from Adam's genetic material (neither had belly buttons and had bodies were different than human beings today). Eve was created as helpmate and only became wife after the fall. Only then was children possible See Book of Mormon 2nd Nephi 2 22-23. Yet, when the great flood came all men were destroyed save Noah a direct descendant of Adam, Noah's wife and their three sons and their wives. Being a total of eight leaving the ark. Therefore, Kim is descendant from two created beings that fell from perfection. These were created by the Creator of all things. See Genesis 2-10 of the Bible KJV. Kim is currently in custody by the Parole and Probation department of Nevada in Clark County as a post verdict detainee and cannot leave Clark County under threat of immediate arrest and greater punishment than probation. That Kim was a pre trial and pre verdict detainee continuously from May 21, 2019; through March 9, 2022 of LVMPD by way of a GPS ankle bracelet monitoring device which device is part of the physical plant of CCDC yet worn around

Kim's ankle. Kim is a believer in the Creator of all things and took a wife ("Nancy") and had two children as of 1990. This was intended to be its own religious society. Yet, by way of State action Nancy separated from Kim and Kim was denied raising his children for months and years on end in accord to Kim's religious beliefs and practices. Kim's two sons now are grown yet not married and have gained respect for Kim's religious beliefs and practices even as the world around us becomes more and more insane and delusional. Kim has hope that both Kim's sons will establish a great relationship with the Creator who is the father of all things. Kim in a spiritual sense is, as all earthly parents are, a foster parent. That the Creator is intended to be a father to us all. Although many choose to call Lucifer their father, either overtly or covertly. Still, even though Kim's adult children are themselves adults. Kim must stand as a good example against tyranny to them or Kim could cause his children to stumble. Kim is also required to speak and write as the holy spirit would have Kim speak and write. Kim therefore is a religious entity that is indivisible and established by the Creator. That therefore Kim comes under the Establishment Clause of the First Amendment to the U.S. Constitution protections. As part of the Creator's calling, Kim, does do some investigative journalism and Kim has been called to investigate judicial corruption and misconduct as an unpaid, volunteer [which means unofficial]

investigator working with [or, for] the Nevada Commission on Judicial Discipline ("NCJD") and Kim· is in truth and in fact an unpaid, volunteer [which means unofficial] investigator working with[or for] the Nevada Commission on Judicial Discipline.("NCJD").

That Kim recognizes that fireman, policeman, and paramedics among others are referred to as "first responders". That Kim is an **immediate responder** as part of his religious beliefs and practices and calling by his Creator. Such that if Kim sees a fire Kim will do all he can to help. If Kim sees certain crimes in progress, Kim will make a citizens arrest if possible. If Kim sees a medical problem such as a choking or a heart attack Kim will do a Heimlich maneuver or CPR respectively or whatever is needed at that immediate time and without delay (unless someone else gets there first of course) That this immediate responder status and other items above are an extension of Kim's religious beliefs and practices which is not unlike other religious organizations such as Catholics and Lutherans and Methodist that establish hospitals and such and even the Jehovah's witnesses have been successful in helping created Bloodless Medicine Centers within hospitals. That no Judiciary, Legislative branch or Executive branch can legally or constitutionally violate Kim's religious establishment or practice just because Kim is a religious establishment of one corporeal being, distinct from other humans or corporeal beings or from different religious organizations made up of many human beings.

That this Establishment does not negate the ability or power or right of Kim to fellowship with other religious establishments to congregate, assemble or to defend against foreign and domestic enemies to the U.S. Constitution and against enemies of the Creator and his son Jesus. Kim sues in his individual capacity and as an established religion under the first amendment to the U.S. Constitution.

Kim is also a citizen and subject of the Kingdom of Israel and an ambassador for Jesus the Christ the King of this very Kingdom. That in 1993 Kim rescinded, relinquished and lost his native born citizenship under 8 U.S.C. Sec 1481 by taking an oath to the Kingdom of Israel and the King, Jesus the Christ while outside the United States in accordance with 8 U.S.C. Sec 1483. That Kim subsequently returned to the United States to advance his mission as Ambassador for Christ and to bring the good news to others. That Kim routinely carries identification and a passport of the Kingdom of Israel.

Kim is being held in custody within Nevada and cannot leave without written permission of the Nevada Parole and Probation Department without risking immediate jailing.

6. Defendant Las Vegas Metropolitan Police Department("LVMPD") is a political subdivision of the State of Nevada and employs the Doe Defendants.

7. That Kenneth Mead ("Mead") was a detective for many years with the LVMPD and that to Kim's knowledge Mead is still a member of the FBI task force against

7

terrorism and is religiously hostile to Kim and sees himself as serving good and sees Kim as serving evil and that Mead views Kim's efforts to stand for liberty and freedom and against tyranny and constitutional violations by government officials as "anti government" and therefore a threat to a rogue state which Mead supports and does nothing to prevent.

That Mead in many respects sees good as evil and evil as good, and his religious practice is to punish good individuals and retaliate against them if they investigate and/or challenge persons that are in authority in local, state, or federal government positions even if they are acting in violation of the constitutions and or violating the law.

That Mead was a party to the retaliatory arrest and imprisonment and prosecution of Kim on September 16, 2022 through February 22, 2023. Both felony charges Kim received a favorable determination with denial for one and dismissal for the other.

**Defendant Vance Neeson**

7.1. That Officer Vance Neeson ("Officer Neeson") is a police officer with LVMPD and was a party to the retaliatory arrest and booking of Kim on September 16 2022 into CCDC.

7.1 On information and belief, Defendant Officer Neeson ("Officer Neeson") was a LVMPD officer at at all relevant times herein.

8

7.2 Defendant Neeson personally participated in the constitutional violations herein.

7.3 Defendant Neeson interacted with Kim.

7.4 Defendant Neeson was acting under color of law

7.5 That Officer Cynthia Martinez is a police officer with LVMPD and was a party to the retaliatory arrest and booking of Kim on September 16, 2022 into CCDC.

7.6 On information and belief, Defendant Cynthia Martinez ("Officer Martinez") was a LVMPD officer at at all relevant times herein.

7.7 Defendant Martinez personally participated in the constitutional violations herein.

7.8 Defendant Martinez interacted with Kim.

7.9 Defendant Martinez was acting under color of law

*Defendant Oscar Cardenas*

7.10 On information and belief, Defendant Oscar Cardenas ("Officer Cardenas) was a LVMPD Corrections officer at CCDC at all relevant times herein.

7.11 Defendant Cardenas personally participated in the constitutional violations herein.

7.12 Defendant Cardenas interacted with Kim.

7.13 Defendant Cardenas was acting under color of law

*Defendant Anthony Abell*

7.14 On information and belief, Defendant Anthony Abell ("Officer Abell") was a LVMPD Corrections officer at CCDC at all relevant times herein.

7.15 Defendant Abell personally participated in the constitutional violations herein.

7.16 Defendant Abell interacted with Kim.

7.17 Defendant Abell was acting under color of law

*Defendant Stevee Fernandez*

7.18 On information and belief,, Defendant Stevee Fernandez ("Officer Fernandez") was a LVMPD Corrections officer at CCDC at all relevant times herein.

7.19 Defendant Fernandez personally participated in the constitutional violations herein.

7.20 Defendant Fernandez interacted with Kim.

7.21 Defendant Fernandez was acting under color of law

*Defendant Faaiu Poloa*

7.22 On information and belief, Defendant Faaiu Poloa ("Officer Poloa") was a LVMPD Corrections officer at CCDC at all relevant times herein.

7.23 Defendant Poloa personally participated in the constitutional violations herein.

7.24 Defendant Poloa interacted with Kim.

10

7.25 Defendant Poloa was acting under color of law

*Defendant Victor Armendariz*

7.26 On information and belief, Defendant Armendariz ("Officer Armendariz") was a LVMPD Corrections officer at CCDC at all relevant times herein.

7.27 Defendant Armendariz personally participated in the constitutional violations herein.

7.28 Defendant Armendariz interacted with Kim.

7.29 Defendant Armendariz was acting under color of law

*Defendant Valenzuela*

7.30 That Corrections Officer Richard Valenzuela was an officer at CCDC on or about September 23, 2022 and did lock Kim down in retaliation for asking a legitimate question.

7.31 On information and belief, Defendant Armendariz ("Officer Valenzuela") was a LVMPD Corrections officer at CCDC at all relevant times herein.

7.32 Defendant Valenzuela personally participated in the constitutional violations herein.

7.33 Defendant Valenzuela interacted with Kim.

7.34 Defendant Valenzuela was acting under color of law

*Defendant Portello*

7.35 That Corrections Officer James Portello was a Corrections Officer on or about

September 25, 26, 2022

7.36 On information and belief, Defendant Portello ("Officer Portello") was a LVMPD Corrections officer at CCDC at all relevant times herein.

7.37 Defendant Portello personally participated in the constitutional violations herein.

7.38 Defendant Portello interacted with Kim.

7.39 Defendant Portello was acting under color of law

**Defendant Does 1-3**

7.40 That Corrections Officers Does 1-3 were Corrections Officers in September, 2022 .

7.41 On information and belief, Defendants Does 1-3 ("Does 1-3") were LVMPD Corrections officer at CCDC at all relevant times herein.

7.42 Does 1-3 personally participated in the constitutional violations herein.

7.43 Defendants 1-3 interacted with Kim.

7.44 Defendant 1-3 were acting under color of law

## FACTS COMMON TO ALL CAUSES OF ACTION OR COUNTS

8. That Kim was first remanded into the custody of then sheriff John McCarthy in 1979 (for a 24 hour - sentence) and this is where and when Kim's numeral #363075 was generated. That LVMPD has the policy, practice, and custom through

these decades, of using an inmates originally generated numeral to be reused again and again when said individual is reincarcerated either on new charges or for any other reason. That Kim was again in LVMPD custody in the CCDC with then sheriff John Moran on or about 1986 for approximately (10) ten days. That Kim was again in custody of CCDC in 1993 and again in 1994 at various times again under the control of then sheriff John Moran. That Kim again was in custody of CCDC in 1995 under the control of Sheriff Jerry Keller. That a continuing. course of conduct and pattern of the violations of Kim's civil rights by LVMPD under color of law has continued to this day and specifically as to LVMPD and the Doe defendants from May 21 to the very date of this writing September 16,2024 as related in this complaint. That although Kim did not always file suit or complaints because in certain instances Kim was directed by God to forgive and not file that there are times when Kim must forgive and yet file a complaint. That Kim was labelled by LVMPD as a "jailhouse lawyer" in their own documents Kim obtained through discovery in Case No. 2:22-cv-00562-GMN-EJY a term that is intended to have a derogatory connotation and is designed to invite resentment, hostility and retaliation against Kim and to motivate certain persons to inflict bodily and emotional distress by CCDC and LVMPD officers.

Yet these violations that to a large part over these decades have gone unaccounted for and/or minimally accounted for have emboldened LVMPD and its

13

employees to continue to retaliate against Kim and others similarly situated because of their exercise of rights guaranteed under the first amendment and other amendments

9. That during all of the above incarcerations and in custody situations above, Kim made repeated complaints about civil rights violations to no avail in Kim's situations. Among these were; a. being made to sleep on concrete floors with no mattress for up to 72 hours in "booking cells" due to alleged overcrowding,

b. That in these "booking cells" Kim was given meals yet denied a toothbrush to maintain Kim's increasingly aging teeth. That while the Creator created a process for regeneration and regrowth of skin. The Creator has not created a process for regeneration of human teeth that maintenance of teeth is required. That locked in a cell and at the total "mercy of officers" there was no opportunity for Kim to have access to required teeth brushing materials and Kim's teeth and Kim's health has deteriorated as a proximate cause of these deprivations over decades. That thankfully Kim has most all, of his natural teeth although many have holes in them in part due to the above deprivations. That Kim was raised to brush his teeth in the morning and before bed, at the least and has maintained this to date except for those times when Kim has been in the concrete floors and denied a tooth brush by CCDC.

c. That even thou Kim demanded access to writing materials and mailing for Kim

was denied access to said materials in these booking cells save for one instance when Kim's demand was met and Kim was given a felt tip "sharpie" type marker and paper in the "Z cells" at a time when the single tower of CCDC only was in existence in 1986. Thus, proving that it was possible. To provide writing materials in holding cells. Yet in subsequent incarcerations Kim was denied writing materials Kim demanded. Yet Kim was denied these necessary legal materials in violation of Kim's civil rights and meaningful access to the courts.

d. That Kim in retaliation for asserting his rights was retaliated against and wrongfully put into, solitary confinement stripped down and with no clothes and with no sheets or blanket in CCDC in these past decades at various times. That this retaliation has escalated over decades as Kim becomes more bold in speaking the truth, the retaliation becomes even greater.

10. That there has been a continuing course of conduct of retaliation against Kim and other inmates of CCDC and/or the various sheriffs of Clark County for those that assert their rights. That this court can take judicial notice that hundreds of lawsuits have been filed against LVMPD and the various sheriffs through the decades and over the decades and that substantial out of court settlements have been made that resulted in dismissals of those complaints after settlement for violation of civil rights, as well as jury verdicts and judgments against LVMPD and CCDC and their officers.

11. That rather than take true corrective action such as vigorous training and updated policies including zero tolerance policies for violations of civil rights LVMPD and employees have made the deliberate calculation that lawsuits and settlements after the fact are a "cost of doing business". That the defendants and LVMPD have made deliberately the calculation that allowing continuing abuses is less expensive than putting in proper training and a zero tolerance policy. Except with sexual harassment and sexual abuse with which they have a zero tolerance policy and said policy of zero tolerance for sexual abuse has been extremely effective in virtually eliminating sexual abuse and sexual harassment.

12. That on May 21, 2019 Kim was arrested on an arrest warrant issued on May 20, 2019 from the Las Vegas justice court Department 14 and taken to CCDC by and LVMPD officer. That a hearing was scheduled within the time required by County of Riverside V. McLaughlin. 500 U.S. 44 (1991) for May 22,2019.

13. That once again Kim after decades on and off of retaliation by various sheriffs and employees of LVMPD and CCDC was wrongfully retaliated against when Kim objected when an officer tried to force Kim to stick a DNA "collector" into Kim's mouth without Kim being able to see said employee pull said "collector" out of a package. Kim. therefore was suspicious of whether the collector stick was sanitary and/or unpolluted. Kim asked for a replacement stick with the correct protocols being used Instead Kim was stripped of clothes, put in a super cold punishment cell

and given "single use" Styrofoam dinner plates instead of the usual plastic washable multiuse tray. Kim was subsequently marked maliciously and willfully as "refused to come to court" and was thus not taken to court on the May 22, 2019 date and was not taken until May 24, 2019. That Kim never refuses to go to court and Kim always wishes to speak to judges since they" sit in the seat of Moses" which is part of Kim's religious practice to always be willing to speak to judges. Kim never declines to speak to any judge anywhere and at any time. That Kim was denied his legal mailing between the May 21 and May 23 that Kim had his legal mail destroyed by an LVMPD employee against Kim's will and over his objections that was directed to the federal court. Said employee laughed and refused to call a supervisor to address Kim's grievance.

14. That as a result of the foregoing events Kim did not appear in an initial appearance before a judge until May 24, 2019 and as a result Kim was released from CCDC on bail and GPS ankle bracelet (2) two days later than Kim would have been released. That the defendants refused to transport Kim to a hearing in the City of Las Vegas Municipal court nor to even inform said court that they had Kim restrained of his liberty know a warrant would be issued and thereby jeopardizing Kim's house arrest release.

That all of the above violations may be outside the statute of limitations for filing, yet are evidence of continuing retaliation. Yet the history of Kim's prior

17

encounters have been used to generate animus, contempt and retaliation against Kim as Kim is looked at as the "problem" and not the employees of LVMPD, past and present that saif employees abuse and violate rights with no accountability.

15. That Kim was released pre trial on a criminal complaint charging Extortion to 3,000 bail and GPS house arrest High Level under state law which is actually punishment under NRS 211.300 and allows a judge to subject one to punishment as though one were a convicted person.

16. That Kim throughout this latest custody by the defendants from 2019 through this October 31, 2022. has been subjected to refusal to process Kim's legal mail and Kim has been retaliated against for Kim exercising Kim's first amendment rights that this has proximately caused injury and damages to Kim and to his rights.

17. That Kim needs declaratory and injunctive to protect Kim: going forward against any further retaliation and protection of Kim's rights.

18. That due to the fact that Kim is now in post verdict status Kim's health safety and rights are in even greater danger as Kim has been returned to probation. Kim was on monitoring on March 9, 2022 after a verdict against Kim. after Kim was by order of Judge Linda Bell .on April 3, 2020 was adjudicated down to medium level non punishment GPS house arrest. Kim was released to this medium level on April 5. 2020 and on this almost uninterrupted (except for a two week period to see Kim's son Andrew receive his P.hD in Davis California.

18

19. That Kim between May 21, 2019 and July 2019 Kim was returned to CCDC physical plant by the defendants without any prior judicial review and without any warrant whatsoever. the internal modules or cells appear not to be considered any differently that the house arrest module ankle bracelet and especially so since Kim was then again on high level or punishment house arrest. Kim was subject to even more possibility of retaliation.

20. That while on high level punishment GPS Kim is denied his religious practice ' that requires Kim to live move and have his being according to faith in each moment. That Kim was specifically denied this in the 2019 period above because Kim is not a member of a "mainstream religious group" such as Catholic, Protestant or even Jehovah's Witness. ,

21. That Kim was moved by his Creator to go out to dinner and an activity with Kim's two adult sons and on a separate occasion to take out Evelyn Pendergraft ("Evie"), Kim's then 96 year old housemate on an important religious excursion ("now deceased"). 'Yet Kim was denied both of these by Kim's house arrest officer Daniel Webb and Danial Webb's supervisor.

22. That with high level monitoring Kim had a curfew between 6 p.m. and 6 a.m. PST that did not allow for Kim's established religion and Kim's religious practices. That Kim's religious practice requires that Kim be allowed to move by faith and that everything that is not of faith is sin. Even in what a man eats or does not eat

See Romans 14: 23" "And he that doubteth is damned if he eat, because he eateth not of faith: for whatsoever is not of faith is sin.". That the famous Jonah was punished because, he refused to go as the Creator commanded. See Jonah 1 and Jonah 2 and Jonah 3 and Jonah 4. Kim is commanded by the Creator not to be any less than Jonah and to do as the Creator commands at all times. There is no rational nor valid penological interest basis for the defendants to allow mainstream religious, practice and not to allow Kim's religious practice. That Kim and other .similarly situated individuals(neighbors) believe that the Bible is inspired words from God. That God's son Jesus is the word of God. That Jesus who was crucified now over 2000 years ago was resurrected and is alive today. Although to Kim's, knowledge Jesus does not appear in corporeal form today. Yet it is promised that all in the world will see him coming in the clouds with glory. See e.g. Mark 13:26 KJV Jesus, is also called the way the truth and the life. That no one comes to the father but by him. See John 14:6. That Kim must speak and write as the Holy spirit gives Kim to speak:

16. Behold, I send you forth as sheep in the midst of wolves: be ye therefore wise as serpents, and harmless as doves.

17.But beware of men: for they will deliver you up to the councils, and they will scourge you in their synagogues;

18. And ye shall be brought before governors and kings for my sake. for a

testimony against them and the Gentiles.

19: But when they deliver you up, take no thought how or what ye shall speak; for it shall be given you in that same hour what ye shall speak.

20: For it is not you that speak, but the Spirit of your Father which speaketh in you. "(emphasis added) Matthew 10: 16-20.

23. That the prophets and Apostles of old did not have the U.S. Constitution and hundreds of years of case law and pre-constitution documents such as the Magna Carta, Declaration of Independence etc. to plead for religious liberty and for due process protection against "Governors". That Kim as a believer in the Christ must use these authorities to the best benefit of all. That Kim is commanded to use his gifts to the best use possible for his neighbors that are no less damaged than, the man in the story of the Good Samaritan (which most in America have heard of).

24. That Kim's religious practice requires Kim to attempt to resolve disputes, without filing a formal complaint if possible and directly with the individual or entity if possible.

24.1 That in January of 2020 while an incompetent detainee at CCDC under an involuntary commitment order  that Kim was put into solitary confinement and in Retaliation against Kim that Kim's pencils and flex pens were taken away from him. That the Creator gave Kim a nosebleed and Kim wrote with blood mixed with water. That Kim's legal mail that was written with this blood mixed with water to

the Ninth Circuit court of appeals for an ongoing case was refused to be mailed by a guard. That after release from CCDC this mail that was refused mailing by a guard at CCDC was taken to a USPS office and they stated that they would in fact mail it.

24.2 That Kim in no way would have written in blood mixed with water if Kim had a pencil and/or pen. That Kim has to this day this and other writings made by this blood mixed with water that Kim kept as discovery evidence.

24.3 That Kim in 2020 while under an involuntary commitment order was transported to Lakes Crossing Center ("LCC") that just before being transported Kim was put in high risk transport with security mittens and extensive hands, waist and ankle cuffs. Kim also had goggles put on with blindfolded material between the goggles and Kim's eyes, not unlike a Hannibal Lecter of the movies. That Kim was taken to an airplane blinded. That while on the plane to LCC in Sparks Nevada guards said that "maybe we should throw Blandino off the plane. This was done in retaliation because of Kim's free speech and religiously motivated speech.


## COUNT 1

**Retaliatory arrest and 45 day jailing (or imprisonment) and prosecution in violation of the First Amendment in violation of the fourth and 14th amendments to the U.S. Constitution   (Free Exercise and Establishment**

clause)

25. Plaintiff incorporates by reference all of the paragraphs in this complaint   into each other by this reference  as though fully set forth herein.

26.  Plaintiff's  sincerely  held  religious  beliefs  and  practices  and  religious establishment command, that faith without works is dead. That to believe yet not practice is hypocrisy,  that  the  Bible  is  inspired  words  from  God  and  is  the testament to persons of conscience.

27. Plaintiff believes that part of the process of living by faith is to convince others that are of little or no faith that the narrow path is the right and true path. That when this high level monitoring has been and is being used by the defendants to deprive Kim of exercise of his faith which must be done with acts.

28. That without the. above religious beliefs and practices not being acted upon Kim suffers irreparable harm and others are harmed.

29. That the constitutional deprivation is affecting Kim's ability and abilities to concentrate and to work efficiently at even basic legal tasks.

30. That Kim has had to as a result of the deprivations to put aside tasks that Kim otherwise would have been able to perform due to Kim's reduced performance.

31. That on September 16, 2022 Kim was stopped by Neeson and Martinez on a traffic stop near bonanza and 16th street.

32. That Kim was asked to show his papers by Martinez. That when Kim was

asked to show his drivers license Kim showed his Kingdom of Israel passport created in 1993 to Martinez. (That Kim had two originals of his passport with him both with original signatures on them.) That Martinez did not want to look at this document closely. That bodycam footage is available of this stop and arrest. That Martinez and Neeson at first were not going to arrest Kim. Yet at some point Mead was called by either Neeson or Martinez to the scene. Kim found out later there was a notice on the computer to contact Mead in the event Kim was stopped. That Mead has a tremendous animus toward Kim and has been investigating Kim since around 2012 according to his own under penalty of perjury testimony in open court. That Mead testified at Kim's criminal trial for which Kim was on probation for at the time of the stop. That Mead was irate and incensed that Kim was not sentenced to prison rather than given probation on the charges brought in 2019. That Mead also testified at Kim's misdemeanor trial as a result of the abovementioned stop on September 16, 2022.

33. That when Mead came to the aforementioned traffic stop it was clear that Mead wanted to make Kim suffer and inflict extreme mental and emotional distress upon Kim if it was possible and to retaliate against Kim. That Mead knew that every thing on Kim's passports was true or that Kim believed them to be true and that these passports were in fact part of Kim's religious beliefs and practices. And that Kim is an Ambassador for Christ and the Kingdom of Israel.

34. If not but for the fact that Mead was called to the scene Kim would not have been arrested but given a citation.

35. That if not but for the fact Kim was exercising his first amendment rights of expression and religion and had the passports in the truck Kim would not have been arrested on 2 counts of possessing a document for false status under the Nevada Revised Statutes 205.465 ("NRS").

36. That this retaliatory arrest by Mead and then Neeson and Martinez was designed to chill Kim's carrying of these documents in the future and would chill any reasonable person from carrying these documents in the future and also from being a believer in Jesus the Christ and either a follower of his or a disciple or an Ambassador for Christ.

37. That Mead knew that Kim's status was not false and Mead had years of investigating (information in police report) Kim to know that Kim was and is sincere in his religious beliefs and practices even in times of extreme duress or coercion.

38. That Kim was given own recognizance release on all charges on September 28, 2022. That if not but for mead's retaliatory involvement at the very worst Kim would have been released from jail on September 28, 2022. Parole and Probation does not hold probationers in jail for misdemeanor traffic charges

39. That there was no probable cause that Kim's documents were false and in fact

Kim had the one count denied by the district attorney and Kim had the other count dismissed on motion of the District attorney. Therefore, Kim had favorable termination of the NRS 205.4645 charges.

## COUNT II

## Malicious Prosecution in violation of the fourth and 14th amendments

39. Plaintiff incorporates by reference all of the paragraphs in this complaint into each other by this reference as though fully set forth herein.

40. That Mead and Neeson and Martinez knew there was no probable cause on the false status charge and in fact with two original passports with original signatures and Kim's well defined picture on both there was no probable cause for a second charge since the additional passport was clearly a spare like a spare set of keys.

41. That there was malice on the part of Mead and that Neeson and Martinez wrongfully reacted to the malice of Mead.

42. That Kim was damaged by the Malicious prosecution and was held in jail as a result for over 45 days. Which stay in CCDC further resulted in damage to Kim.

## COUNT III

## Retaliation Claim in Violation of the first Amendment to the U.S Constitution

43. Plaintiff incorporates by reference all of the paragraphs in this complaint into each other by this reference as though fully set forth herein.

26

44. That for all of the violations of Kim's rights as listed above Kim was retaliated against for exercising his right to free speech and his religious rights.

45. That defendants LVMPD and knowingly or with gross negligence and in deliberate indifference to the rights of individuals guaranteed under the Constitution maintains formal or de facto policies fails to provide training and policies that would prevent various employees from retaliating against Kim for exercising his right to .free speech and to exercise his religion.

46. That both in the January 2020 incident and the April 2020 incidents Kim spoke to irrational behavior on the part of various officers and/ or nurses and Kim was specifically put in solitary confinement on the January 2020 incident and on the April 3-5 2020 event Kim. was locked down to his cell after merely telling a nurse that she was impatient and rude in accord with Kim's free speech and religious practice. That Kim was locked down for 48 hours while still under a commitment order and punishment; is specifically prohibited pursuant to well established case law.

47. That it is well established where criminal proceedings are suspended due to a commitment for competency review.' There is to be no punishment whatsoever under Nevada Law.

48. That LVMPD had no procedure whereby Kim or other inmates would be prohibited from punishment.! That Kim repeatedly demanded that the defendants

27

comply with Bumside v Whitley and not subject Kim to punishment.

49. That despite Kim's filings with the Federal District Court and various grievances Kim was punished for complaining about CCDC staff on or about On or about January 6, 2020 through January 20, 2020 at the NVC satellite plant of CCDC. That Kim iii fact was punished and sent to solitary confinement as well as being denied the right to order reading glasses from the store as punishment.

50. That Kim was further punished by having all of Kim's writing implements taken from him while in solitary confinement. had and has the right to legal mailing out and to receive legal mail . That the denial of Kim being able to send legal mail from CCDC resulted in a dismissal of Kim's appeal to the Ninth Circuit Court of Appeals.

51. That Kim made repeated grievances to complain of this treatment in violation of Kim's rights to np avail. Kim asked for some part of CCDC that did not subject Kim to punishment and Kim was treated with deliberate indifference.

52. That on January 24, 2020 Kim was orally ordered committed to joint custody of sheriff Lombardo and/or the Division of Public and Behavioral Health ("DPBH") and/or LVMPD to be examined. That this written order was filed on January 29, 2020. Yet Kim was still punished by the defendants repeatedly through April 5, 2020.

53. That Lombardo and/or LVMPD and other defendants knowingly or with gross

28

negligence and in deliberate indifference to the rights of individuals guaranteed under the Constitution maintains formal or de facto policies which fail to restrain CCDC and LVMPD employees from punishing individuals under a commitment order.

54. That Lombardo and LVMPD knowingly or with gross negligence and in deliberate indifference to the rights of individuals guaranteed under the Constitution maintains formal or de facto policies fails to provide within CCDC a section where the same non punishment protocols and policies of DBPH are maintained.

55. That Kim was punished repeatedly ,by LVMPD and defendants during his remand and commitment from Jan 3,2020 through April 5,2020.

56. As a direct result of the punishment of Kim all persons are harmed when their first 5th and 14th amendment rights, are unlawfully denied and this policy is duplicated with all other committees,

57. That as a direct result of the lawless behavior Kim suffered distress that has directly caused Kim . and causes Kim distress to this day and Kim's great concern and distress that Kim will again be wrongfully punished again by the defendants.

58. That Kim has great fear and distress that the defendants will again subject Kim to further punishment and violation of Kim's rights.

59. That this very distressing and continuing course of conduct that Kim has

29

experienced over decades by the various sheriffs and person described above just keeps repeating over and over again.

60. That the failure of LVMPD to properly train all of its employees caused the deprivation of Kim's constitutional rights. That the policy of LVMPD is to not invest in proper training and that in house actuarials ("bean counters") within LVMPD calculate that constitutional rights will be violated and that in Kim's case that Kim's rights would be violated and that any lawsuit or settlement thereof is just a cost of doing business.

61. That the aforementioned policy amounts to deliberate indifference to Kim's constitutional rights.

61.1 That the aforementioned policy is the moving force behind continued violations of constitutional rights of Kim and other hundreds of people that interact with LVMPD.

61.2 That the retaliation violations that are listed in this complaint were entirely avoidable if LVMPD had properly trained its employees and adopted a zero tolerance police to constitutional violations of individual rights.

61.3 Also that LVMPD has a policy opposite of a least restrictive means to achieve the needed penological interest and trains its employees to instill terror in its inmates as a means of control by chilling exercise of rights of free speech and free exercise of religion. To which Kim was subjected. In effect the LVMPD has a

policy or custom to Kill "flies with a cannonball". That in April of 2020 Kim could have just been sent to his cell and given a verbal warning but the motive was to chill Kim's future speech and exercise of religion by unconstitutionally locking Kim down for 24 hours.

61.4 That Kim was denied the rights to free exercise of religion free speech and freedom from false arrest and detainer without denying due process.

61.5 That only through discovery did Kim discover that Cardenas was the one that ordered the lockdown on Kim for telling Nuse Alexia (name also obtained through discovery) that she was rude and impatient.

61.6 That Abell participated and aided Cardenas in the lockdown and enforced the lockdown through the 48 hours.

61.7 That Kim also discovered through discovery that Fernandez and Poloa and Armendariz also participated in the lockdown on different shifts than Cardenas and Abell. That these other guards did aid Cardenas in enforcing this retaliatory lockdown.

61.8 That if Abell or Fernandez or Poloa or Armendariz had challenged or not aided this illegal retaliatory lockdown that was not entered into the "elite system" then this wrongful action might have been stopped and or come to light sooner

## COUNT IV

**Retaliation for exercise of first amendment for asking a question**

Valenzuuela

62. Plaintiff incorporates by reference all of the paragraphs in this complaint into each other by this reference as though fully set forth herein.

63. That from the Incident history supplied through discovery on Case 2:22-CV-0562-GMN-EJY this appears:

> "On 9/23/2022 at approximately 1535 hours I saw inmate Blandino running from the telephone area to get his chow getting everybody[SIC] attention from the module I told him to slow down. When he came close to the officer desk. I verbally warned him not to do it again otherwise he would be issued a lockdown. After inmate Blandino Blandino pick [SIC] up his food he gets my attention and said, So CO is this slow enough for you?" and inmates were laughing and he thinks his [SIC] funny. He was verbally counseled and issued him a lockdown that ends on 9/23@ 2300 hours"

64. That the identified officer is Valenzuela R15793V and it is clear from this language that Kim was not going to be given a lockdown until Kim simply asked a question which is protected speech.

65. That if not but for Kim exercising his freedom of speech and religiously motivated speech Kim would not have been given this lockdown.

66. That this lockdown did chill Kim's speech as it would any reasonable person and was designed to intentionally inflict extreme emotional distress. Kim was not running he was merely walking fast to inspire everyone else in the module as 99% of Kim's time there  in that dormitory module Kim was the oldest person in the module. That Inspiring people is part of Kim's religious practice

32

67. That asking a legitimate question is the most revered and important of free and protected speech and Kim was punished for it then Kim knows that at CCDC Kim could be severely punished for virtually anything. That if not but for this chilling effect Kim would ask even more questions and speak even more than he does and speak up more.

68. That punishing Kim for asking a legitimate question does not in any way advance a legitimate correctional goal. It is just to intimidate and instill terror in an individual.

69. That this above continuing course of conduct creates a real and present danger to Kim and distress to Kim. That Kim is distressed on a constant basis because of the above and below,

## COUNT V

**Violation of the First Amendment to the U.S. Constitution by retaliating against Kim for exercising the free exercise of religion and for exercising free speech    Does 1-3**

70.    Plaintiff incorporates by reference all of the paragraphs in this complaint into each other by this reference as though fully set forth herein.

71.    That the transporting of Kim as cited above with high risk protocols (minus the goggled blindfolded) occurred on September 20, 2022 in order to humiliate and embarrass Kim and damage Kim  was done to Kim on a Justice Court appearance

at a meaningful first hearing after arrest.

72. That in fact Kim was denied to be taken to a scheduled first appearance on September 17, 2022. This is documented at the Justice Court at the website https://lvjcpa.clarkcountynv.gov/Anonymous/CaseDetail.aspx?CaseID=13912728 .

73. That Kim has not the names of the officers at present that did this transport and are Does 1-3.

74. That Kim has never been violent nor threatened violence and there was and is no legitimate reason to have Kim labelled as a high risk transport.

75. This in fact did not advance any reasonable and legitimate correctional goal it in fact used unnecessarily scarce jail resources

76. That LVMPD and CCDC allows this type and the above type of retaliation by custom even though it might be against any written policy. Just like the "KKK" which prompted 42 U.S.C. 1983, and its companion sections of the Code. That the criminal aspect of the U.S. Code also was prompted by the "KKK" The "KKK" rarely had written out ways to violate rights. State officials under color of law would often just "wink and a nod" to violate rights.

77. The evidence that retaliation is tolerated Kim has experienced over and over again. And any complaint or grievance goes nowhere. There are no serious investigations or accountability for wrongful behavior.

78. That because Kim has throughout his various stays at CCDC has been

outspoken in protected first amendment speech and religious speech for the truth Kim has been so retaliated against. If not but for Kim's bold protected activity Kim would not have been retaliated against.

79. That this has chilled Kim's speech and protected religious speech. That this retaliation would chill any reasonable person.

80. That Joe Gersten who was forced upon Kim as attorney witnessed the high risk transport to court.

## COUNT VI

**Violation of the First Amendment and fourteenth to the U.S. Constitution by retaliating against Kim for exercising the free exercise of religion and for exercising free speech   (Portello incident 1 )**

80. That all prior paragraphs are hereby incorporated into this count and all these following paragraphs are incorporated into all prior paragraphs by this reference.

81. That in the discovery That from the Incident history supplied through discovery on Case 2:22-CV-0562-GMN-EJY  item 6 this appears:

> "On 9/29/2022, at 0800 hours, inmate Blandino #363075 approached my desk stating, "let's work out a deal, is there any way I can work for you so you can move my lockdown from today to tomorrow" I informed Blandino that would not be happening. Blandino then stated, "you need to be flexible and work with me" I told Blandino that he needed to go to his bunk and lockdown, and that he would serve his lockdown during the time it was assigned. At approximately 0730 hours Officer Gonzales #8840 relived me for a break, I briefed

35

Gonzales on what was going on and who had lockdowns. When I returned, Officer Gonzales informed me that right after left, Blandino approached him about overturning my lockdown so he could use the phones. At approximately 0800 hours while performing a routine visual check, I informed inmate Blandino that due to his failure to follow directions by attempting to circumvent the system he would be receiving an additional 24-hour lockdown"

82. So, in this instance Portello retaliates against Kim for simply trying to appeal a decision on a lockdown and gives Kim another 24 hour lockdown for trying to appeal.

83. That if not but for Kim trying to appeal a lockdown Kim would not have been given another 24 hour lockdown.

84. An appeal of disciplinary action is protected activity and this action advance no legitimate correctional goal.

85. This event had a serious cumulative chilling effect upon Kim. Kim would have further spoken to Portello following this second 24 hour lockdown yet Kim was threatened.

## COUNT VII

**Violation of the First Amendment and fourteenth to the U.S. Constitution by retaliating against Kim for exercising the free exercise of religion and for exercising free speech   (Portello incident 2 )**

That all prior paragraphs are hereby incorporated into this count and all these following paragraphs are incorporated into all prior paragraphs by this reference

36

86.   That in the discovery That from the Incident history supplied through discovery on Case 2:22-CV-0562-ĠMŃ-EJY item 3 this appears:

> "On 10/04/2022, at 1205 hours, after I just had a discussion with inmate Blandino #363075 about his failure to follow directions, he decided to make his displeasure known, Stating, "I don't agree with the way you do things". I informed Blandino that he's intitled to his opinion, but he is not above the rules and needed to follow them regardless if he agrees with them or not. Blandino then stated, well I don's know of much that's below you." As he began to walk away I informed Blandino that due to his disrespectful comment (104) he would be receiving an additional 24-hour lockdown, and that if he wished to continue, he would go to disciplinary housing. additional 24-hour lockdown"

87.  That Portello retaliated again against Kim for exercising first amendment freedom of speech and of religious speech. Kim was trying to awaken Portello's conscience by using corrective love as motivated by the holy spirit.

88.  That Portello is a particular bully among officers and continually tries to intimidate and treat inmates as though they were new recruits at boot camp that he can treat as badly as he wishes.

89.  That if not but for Kim speaking as the holy spirit gave Kim to speak to Portello and when Portello said Kim was "not **above**....." it was reasonable to tell Him the truth that ...." I don't know much that's **below you**" .

90.  That Portello proved that this retaliation was intended to intimidate and chill Kim from any appeal whatsoever when Portello said "if he wished to continue, he would go to disciplinary housing." That Kim had to take this to mean that if Kim

spoke to anyone to a sergeant or lieutenant about this he would be sent to disciplinary housing where Kim knew it was likely Kim would be denied writing implements and meaningful access to the courts.

91. That if not but for this protected speech Kim would not have been given this 24 hour lockdown and this did not advance any legitimate correctional goal only advanced terror in Kim and other inmates that witnessed this.

92. That Portello for all purposes went to the Genghis Khan school of discipline. For the slightest apparent impropriety or legitimate challenge the response is to "burn down a village".

93. That Portello desired to instill terror and to not only chill first amendment rights but to freeze anyone who sought to exercise them. Even to the point of locking down anyone who sought to appeal to any of his superiors. That Portello showed clear signs of being a sadist. That Portello admitted that he had reviewed Kim's record and possibly that Kim was a "jailhouse lawyer".

## COUNT VIII

### Intentional Infliction of Emotional distress motivated by anti religious animus (Mead)

That all prior paragraphs are hereby incorporated into this count and all these following paragraphs are incorporated into all prior paragraphs by this reference

38

93. That Mead by his extreme and, outrageous conduct of having Kim put on the computer system so that if Kim was ever stopped by LVMPD Mead could race to the scene above the speed limit if necessary and seek to inflict emotional distress upon Kim through retaliation and with disregard how a 45 day stay in CCDC could cause Kim emotional distress.

94. That by putting Kim on the LVMPD computer system Mead intended to be given an opportunity to cause Kim emotional distress without any repurcussions.

95. That when Mead came to the scene and knew that Martinez did not seek to look at Kim's passport under the guise of an "inventory" Mead found Kim's identical passports. That Mead knew that these passports were not false and that all information was true or Kim believed the information to be true.

96. That Mead outrageously ordered Neeson and Martinez to arrest Kim and send Kim to CCDC knowing that the charge would not be upheld and that Kim would have favorable termination. Yet Mead knowing that Kim could possibly be held for weeks because of Kim's probation status. Thus giving rise to the common expression "One may beat the charges but you won't beat the ride."

97. That Mead's acts were outside the bounds of decency and is utterly intolerable in a civilized community. That individuals have the right to relinquish their U.S. citizenship and pledge allegiance to Jesus the Son of God and have him as their only King and ruler. To further to be able to be an Ambassador to Christ and to

prepare people for Jesus' second coming to Jerusalem and to the earth for all to see even those that pierced him. "Behold, he cometh with clouds; and every eye shall see him, and they also which pierced him: and all kindreds of the earth shall wail because of him. Even so, Amen." Rev. 1:7  That Kim has the right as a missionary and part of his mission to try to convince other American citizens to also accept Jesus as their only King and ruler and if they have the gifts to do so to  leave their American citizenship behind them and be fully part of the Kingdom of Israel.

98. That Mead's outrageous conduct can be more clearly seen in that Mead is prejudiced against Kim and his mission as opposed to Mormon Missionaries or Catholic missionaries or other "mainstream" denominations. That this is prejudice and discrimination of the worst kind.

99. That if not but for these two felony charges Kim would not have had a probation hold and Kim would not have been held apart from Evie for 45 days. This caused great damage to Kim as Kim informally adopted Evie as his mother and Kim's sons Zachary and Andrew informally  adopted Evie as their Grandmother (both their maternal and paternal grandmothers having passed away)

100. That Kim has at all times just sitting anywhere at any time is constantly aware that Mead could come and arrest Kim unlawfully. Even now in typing these words Kim must be hyper  vigilant that Mead could bust through the doors and arrest Kim sitting at his keyboard at any time. Or even worse because of his extreme malice

and animus toward Kim that Mead could beat Kim and possibly kill Kim if Mead lost control of himself.

101. That Mead testified at a hearing in the aforementioned misdemeanor case that Mead has surveilled Kim at 441 N 16th St LV Nev. 35 to 40 times. Therefore, this extreme concern and distress is not unwarranted. Kim has the transcript where Mead admits to this stalking of Kim at least 35 separate times.

102. That Mead has displayed this animus against Kim in front of witnesses and Kim has the names of these witnesses.

103. That Kim discovered upon sworn testimony at a probation revocation hearing on October 27, 2022 that Martinez and/or Neeson had on the police vehicle computer notice to alert Mead if Kim was ever stopped by law enforcement.

104. That Neeson and Martinez had indeed called Mead to said traffic stop after deciding that Kim would be charged with two traffic misdemeanors. That Mead even gave legal advice to Martinez and Neeson.

105. That once Mead came to the site of the stop at 16th and Bonanza where Kim was just one block from the house where Kim was staying with then 97 year old ("Evie"), Mead proceeded to order about Neeson and Martinez. That Mead proceeded to mock and belittle Kim and to seek to manufacture a felony that Kim could be arrested for.

106. That Mead told Kim he was confiscating Kim's permanent Montana plates

41

for the vehicle that were legal in every way. That Mead then ordered Neeson and Martinez to arrest Kim for alleged possession of fraudulent documents a category E felony under the NRS. That Mead stated at this stop that "I want a hold put on Blandino".

107. That Kim did not know for certain until the Martinez testimony that Mead was acting in furtherance of a conspiracy with Michael Federico ("Federico")to chill Kim's religious calling to investigate judicial misconduct and corruption and to specifically stop or greatly hinder Kim in investigating Federico and his judicial misconduct and corruption and seeking to have Federico removed as a temporary judge in any capacity from the Las Vegas city and/or Las Vegas township courts. By seeking the removal of Federico as a temporary judge by the City Council and/or the County Commission and/or the Nevada Commission on Judicial Discipline ("NCJD"). That at that stop Mead told Kim not to file complaints against judges. That when Kim called Mead on this outrageous comment Mead said don't file any false complaints on judges.

108. That Martinez in her testimony gave no indication that the notification to notify Mead within LVMPD was lifted from the computer system.

109. That Kim did make a complaint with the internal affairs division of LVMPD against Mead and asked for a stay away order from Mead coming near Kim. Yet detectives Shronk and unavailable name said that they could not issue a stay away

order.

110. That as of this date Kim has not been able to recover said plates and as such The registration was validated by both Neeson and Martinez who had no inclination whatsoever to confiscate or steal these plates. That these plates are now valuable collector items that Kim needs to have returned.

That Mead also ordered the vehicle towed to a wrecking yard and impounded when Mead could have ordered vehicle towed less than one block to the 441 N 16th street address where Mead knew full well Kim was staying albeit temporarily and had the tow truck put it in the driveway. That this towing and impounding the truck to a distant yard was to further inflict emotional distress.

111. That Mead knew and knows that the Montana plates were legally acquired for said truck and were in fact permanent plates as they were clearly marked as such. That Mead knew that he was acting under color of state law and that Mead knew that even if Kim did not get these same plates back that Kim would be able to replace said plates albeit with much inconvenience and fees and quite a delay in time which was meant to vex and harass Kim and intentionally create great emotional distress in Kim and to again chill Kim's right to travel on the road and to speak freely and exercise religious freedom.

112. That all of the acts were intended to make Kim greatly suffer because of the gross injustice of it and for Mead this is like unto a religious Jihad as Mead's

master or God are those who give Mead his paycheck. The love of money is the root of all evil 1 Timothy 6:10 KJV.

113. That because Mead loves money and power he must hate Kim's master and serve the adversary to Kim's master. No man can serve two masters: for either he will hate the one, and love the other; or else he will hold to the one, and despise the other. Ye cannot serve God and mammon. Matthew 6:24 KJV. Jesus made it clear that he will hate the one and love the other. And Mead has clearly demonstrated he hates Kim's master, Jesus and loves money and power.


## COUNT IX

### 42 U.S.C Sec 1983 – Monell Claim

That all prior paragraphs are hereby incorporated into this count and all these following paragraphs are incorporated into all prior paragraphs by this reference.

114.    That Kim through discovery has now the evidence and will obtain more evidence That LVMPD and CCDC have a longstanding practice or custom to allow retaliation against individuals as demonstrated above.

115 that the numerous incidents of retaliation and deliberate indifference to suffering by violating constitutionally recognized rights. That the denial of a writing implement in solitary confinement. The denial of toothbrushes in holding cells when at least 8 or nine meals have been eaten. The denial of writing

implements in holding cells. Then once Kim creates a legal mailing with blood and water the guard refuses to mail it. Kim has this same letter for review by the court. In all the grievances Kim has filed over the decades with CCDC or NDOP Kim has not had one substantive favorable response!

116. Kim supports that all of the above in this complaint is consistent with longstanding practices or customs the high risk transport protocols that made Kim look like Hannibal Lecter were put in place three separate times when Kim is as non violent as a baby lamb.

117. LVMPD and CCDC refuse in training or practice to have a zero tolerance policy to the above and this is classic deliberate indifference. When as stated above they have the policy as to sexual abuse or harassment.

118. That if CCDC and LVMPD would in there training, for the above violations Kim has chronicled, state that any guard caught denying writing implements or legal mailing or wrongful retaliation for asking a question or using protected speech would be immediately suspended and/or terminated, the above suffering Kim suffered would stop almost entirely and immediately after said policy and training was enacted.

## GENERAL PARAGRAPHS RELATING TO ALL COUNTS

119. That all prior paragraphs are hereby incorporated into this count and all these

45

following paragraphs are incorporated into all prior paragraphs by this reference.

The official policies and procedures of LVMPD fail to adequately train, supervise or discipline officers on treatment of individuals that have different religious beliefs and practices  and therefore constitute a de facto policy causing a custom and practice of LVMPD officers engaging in unreasonable acts against individuals with different religious beliefs and practices then the majority of the public and subjected KIM to the above unconstitutional treatment.

120. LVMPD continues, dozens of years after some of the leading cases in this area of law, to improperly train its officers on applicable Constitutional requirements.

121. The deliberate indifference of LVMPD is further shown by its failure to discipline Mead or any of the Doe defendants involved in any manner.

122. As a result of the constitutional violations Kim has  sustained damages. All citizens are harmed when their civil rights under the above listed are unlawfully denied and the rights of all citizens are eroded when law enforcement subjects citizens to this sort of behavior. Especially when retaliation is designed to chill the exercise of any and all First amendment rights. In addition, Kim   sustained damages to his reputation as pictures and video of the stop circulated with him needlessly being detained in handcuffs and subject to felony charges that have now been dismissed.

123. As a direct result of Defendant's acts. Plaintiff has been damaged in an

amount which will be proven at trial.

124. Plaintiff has or will incur attorney's fees, costs and other expenses in prosecuting these claims and seeks to recover said damages by way of this action along with all pre-judgment or post-judgment interest allowed by law.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

a. To Declare that Kim has a right to be an established religious entity and is entitled to protection under the first amendment to the U.S. Constitution and as such has rights to free exercise of religion and cannot be punished for or retaliated against for free exercise of religion. And enter an immediate judgment as such. And to declare that Kim has a right to have and possess his Kingdom of Israel Passports without being molested because of this possession.

b. To declare that the Defendants have and are attempting to chill Kim and consequently others rights to petition for redress of grievances to free exercise of religion and to establish themselves as individuals as an establishment of religion under ;.the first amendment to the U.S. And to enter an immediate judgment as such;

c. Award Plaintiff Kim any court Costs and if Counsel is obtained for Plaintiff to be awarded court costs and reasonable attorney's fees; and

d. To refer this matter to the Department of Justice for investigations of possible

violations of 18 U.S.C. 241 and 242 and for possible action under 18 U.S.C Sec 3771.

e. That additionally this Court appoint a special master to assure that the Defendants comply with the Court's order.

f. That this court invite amicus curiae participation in this case so that the issues can be fully developed.

g. Award general or compensatory damages according to proof that Kim lost that ability to pursue his religious calling and would go toward Kim's religious establishment that Kim was now deprived of for these over three years because Kim has been unable to anything but virtually eat sleep and do legal work, the proximate cause of the Defendant's actions. That Kim was called by his Creator to investigate judicial corruption and misconduct and seek discipline and that Kim has been unable to do this important calling by his Creator. As well as damages for being unable to expose misconduct to the world such as when Judge Herndon (now Justice Herndon) stating that Kim was acting like an a**hole twice in open court. Which wrongful activity has been watched on national TV and video and you tube by tens of millions of people. See https://www.youtube.com/watch?v=ui4JozqZkWk .

h. Award damages for intentional infliction of emotional distress against all defendants.

i. award damages for loss of sleep loss and loss of productivity, humiliation mental suffering and anquish

j. Award punitive damages in the ratio of 6 to 1 in accord with proof and current case law. . Award such other and further relief as to which the Plaintiff may be entitled that is extremely speedy and complete and where full justice is executed. j. To permanently enjoin the defendants from retaliating against Kim for exercising any first amendment rights.

Respectfully Submitted this 16th day of September, 2024

Kim Blandino PECULIAR PRO SE#363075
CCDC In Custody House Arrest Module
330 S Casino Center Blvd.
Las Vegas, Nevada 89101
(702) 219-5657
No Fax
Kim43792@earthlink.net

## ASSEVERATION VERIFYING COMPLAINT AND IN SUPPORT

I Kim Blandino state under penalty of perjury that I am 68 years of age (outside the womb) and have read the foregoing complaint and motion and the same is true and correct except as to those matters of belief and belief and as to those matters Kim believes them to be true. And that:

1. That any exhibits attached are true and correct copies and are authentic

49

under FRE 901.

2. That this court must take judicial notice of all of the above facts, law and biblical authorities and other authorities, by this verified request.

3. That Kim brought this amended complaint to the court as soon as Kim could possibly prepare, complete and deliver this filing to this court.

4. That Kim's ancestors saw and spoke to the Creator directly. The very same Creator that created time, space and matter and is in control of all. That although the Creator's existence and power can be denied, said denial does not in any way negate these truths.

5. That Kim requests that this court forgive any spelling or grammar errors that Kim may have made due to this situation.

DATED this 16th day of September, 2024

Kim Blandino#363075

## CERTIFICATE OF FILING

I HEREBY certify that filing of the foregoing was accomplished by sending a copy via email on September 16th, 2024 to :

**ly_public_docketing@nvd.uscourts.gov**

Kim Blandino